**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LINDSEY DORCUS, CAROL MARIN, PHILIP ROGERS, ALISON FLOWERS, ROBIN AMER, YOHANCE LACOUR, and VICTORIA NASSIF, individually and on behalf of all others similarly situated, | No. 26-cv-05575 |
| Plaintiffs, | Hon. John Robert Blakey |
| v. | |
| ADOBE INC., a Delaware corporation, | |
| Defendant. | |

**ADOBE INC.'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 4

I. The Complaint Must Be Dismissed In Its Entirety Because Plaintiffs Do Not Plausibly Allege That Adobe Collected *Their* Voice Data. ..... 5

A. Plaintiffs Do Not Plausibly Allege Adobe Collected Or Used Their Voice Data To Train Adobe's Voice AI Models. ..... 5

B. Plaintiffs Do Not Plausibly Allege Adobe Collected Their Voices Through Runtime Extraction. ..... 9

C. Plaintiffs Cannot Rely On "Information And Belief" Allegations Or Adobe's "Exclusive Control" To Obtain Discovery Into Whether They Have A Claim. ..... 10

II. The Complaint Must Be Dismissed In Its Entirety Because Plaintiffs Fail To Plead That Adobe's Alleged Conduct Occurred Primarily And Substantially In Illinois. ..... 11

III. Plaintiffs' BIPA Claims (Counts I–V) Fail To State A Claim. ..... 16

A. All of Plaintiffs' BIPA Claims Fail Because Plaintiffs Do Not Sufficiently Allege That Adobe Possessed Or Collected Their Biometric Data. ..... 16

B. Plaintiffs' Section 15(c)–(e) Claims Fail For Independent Reasons. ..... 16

1. The Section 15(c) Claim (Count III) Fails Because Plaintiffs Do Not Sufficiently Allege Adobe Profited From Sharing Access To Their Biometric Data. ..... 16

2. The Section 15(d) Claim (Count IV) Fails Because Plaintiffs Do Not Sufficiently Allege That Adobe Disclosed Biometric Data. ..... 17

3. The Section 15(e) Claim (Count V) Fails Because Plaintiffs Do Not Sufficiently Allege That Adobe Stored, Transmitted, Or Protected Biometric Data Below The Industry Standard Of Care. ..... 18

IV. Plaintiffs' Remaining Claims Must Be Dismissed For Additional Reasons. ..... 19

A. Plaintiffs' IRPA Claim (Count VI) Must Be Dismissed Because Plaintiffs Do Not Allege Public Use Of Their Identities Or An Unauthorized Digital Replica. 19

1. Plaintiffs Do Not Allege That Adobe Used Their Identities To Sell A Product Or Service. ..... 19

2. Plaintiffs Do Not Allege Adobe Generated Or Distributed An Unauthorized Digital Replica Of Any Plaintiff's Voice. ..... 20

B. Plaintiffs' ICFA Claim (Count VII) Must Be Dismissed Because Plaintiffs Do Not State A Deceptive Practices Or Unfairness Claim. ..... 21

C. Plaintiffs' IUDTPA Claim (Count VIII) Must Be Dismissed Because Plaintiffs Do Not Allege Future Harm. ..... 23

D. Plaintiffs' Unjust Enrichment Claim (Count IX) Must Be Dismissed. ..... 25

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1, 5, 11

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)....................12

*Azuz v. Accucom Corp.*,
2025 WL 2807653 (N.D. Ill. Oct. 2, 2025)....................12

*Batson v. Live Nation Ent., Inc.*,
2013 WL 992641 (N.D. Ill. Mar. 13, 2013)....................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................1, 4, 5, 11

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024)....................7

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*,
2017 WL 4310671 (N.D. Ill. Sept. 28, 2017)....................10

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012)....................3

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)....................24

*Campana v. Nuance Commc'ns, Inc.*,
2024 WL 2809838 (N.D. Ill. Mar. 8, 2024)....................12, 13, 14, 15

*Canter & Assocs., LLC v. Teachscape, Inc.*,
2007 WL 4365480 (N.D. Cal. Dec. 12, 2007)....................11

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011)....................25

*Craw v. Clorox Co.*,
692 F. Supp. 3d 854 (C.D. Ill. 2023)....................21

*D'Ambrosio v. Meta Platforms Inc.*,
176 F.4th 928 (7th Cir. 2026)....................19

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009) ........ 22

*Delgado v. Meta Platforms*, *Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) ........ 18

*Donets v. Vivid Seats LLC*,
2023 WL 11909225 (N.D. Ill. Oct. 10, 2023) ........ 18

*First Midwest Bank v. Cobo*,
90 N.E.3d 567 (Ill. App. Ct. 2017), *aff'd*, 124 N.E.3d 926 (Ill. 2018) ........ 25

*G.T. v. Samsung Elecs. Am., Inc.*,
2026 WL 2279903 (7th Cir. Aug. 7, 2026) ........ 10

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) ........ 3

*Hooker v. Columbia Pictures Indus., Inc.*,
551 F. Supp. 1060 (N.D. Ill. 1982) ........ 24

*Horn v. Method Prods. PBC*,
2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ........ 18

*Huston v. Hearst Commc'ns, Inc.*,
53 F.4th 1097 (7th Cir. 2022) ........ 19, 20

*James v. City of Evanston*,
2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ........ 3

*Kerlin v. Chi. Bd. of Elections*,
2017 WL 5295680 (N.D. Ill. Nov. 13, 2017) ........ 4

*Keystone Montessori Sch. v. Vill. of River Forest*,
187 N.E.3d 1167 (Ill. App. Ct. 2021) ........ 25

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........ 8

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
790 F. Supp. 2d 708 (N.D. Ill. 2011) ........ 23, 24

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
809 F. Supp. 2d 857 (N.D. Ill. 2011) ........ 12

*Lynch Ford, Inc. v. Ford Motor Co., Inc.*,
957 F. Supp. 142 (N.D. Ill. 1997) ........ 25

*Martell v. X Corp.*,
2024 WL 3011353 (N.D. Ill. June 13, 2024) ....................................................................9

*Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*,
2013 WL 4565382 (N.D. Ill. Aug. 27, 2013) ....................................................................23

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ....................................................................5

*McClaine v. DX Enters. Inc.*,
2024 WL 3860971 (S.D. Ill. Aug. 19, 2024) ....................................................................18

*McGoveran v. Amazon Web Servs., Inc.*,
175 F.4th 434 (3d Cir. 2026) ....................................................................13

*McGoveran v. Amazon Web Servs., Inc.*,
2021 WL 4502089 (D. Del. Sept. 30, 2021) ....................................................................12, 13, 14, 15

*McGoveran v. Amazon Web Servs., Inc.*,
2023 WL 2683553 (D. Del. Mar. 29, 2023) ....................................................................9

*In re Mosaic LLM Litig.*,
2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ....................................................................7

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ....................................................................18

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ....................................................................24

*Pooh-Bah Enters., Inc. v. County of Cook*,
905 N.E.2d 781 (Ill. 2009) ....................................................................17

*Prewett Enters. v. Grand Trunk W. R.R. Co.*,
2019 WL 6310495 (N.D. Ill. Nov. 25, 2019) ....................................................................11

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ....................................................................23

*Raw Story Media, Inc. v. OpenAI, Inc.*,
756 F. Supp. 3d 1 (S.D.N.Y. 2024) ....................................................................8

*Rodriguez v. ByteDance, Inc.*,
2025 WL 2495865 (N.D. Ill. Aug. 29, 2025) ....................................................................10, 11

*Rodriguez v. ByteDance, Inc.*,
2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ....................................................................16, 17

*Siegel v. Shell Oil Co.*,
656 F. Supp. 2d 825 (N.D. Ill. 2009) .......... 23

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .......... 7

*Smith v. Respiro, LLC*,
2025 WL 1883817 (N.D. Ill. July 8, 2025) .......... 21

*Stein v. Clarifai, Inc.*,
No. 1:22-cv-00314, Dkt. 29 (Nov. 21, 2022 Hr'g Tr.) (D. Del. Jan. 9, 2023) .......... 14

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) .......... 8

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*,
241 N.E.3d 454 (Ill. 2024) .......... 21, 22

*USAA Fed. Savs. Bank v. PLS Fin. Servs., Inc.*,
260 F. Supp. 3d 965 (N.D. Ill. 2017) .......... 12

*Vance v. Google LLC*,
2024 WL 1141007 (N.D. Cal. Mar. 15, 2024) .......... 13, 15

*Vance v. Google LLC*,
2024 WL 5011611 (N.D. Cal. Dec. 5, 2024) .......... 13, 25

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021) .......... 16

*Yamashita v. Scholastic Inc.*,
936 F.3d 98 (2d Cir. 2019) .......... 10

**Statutes**

740 ILCS 14/15 .......... 16, 17, 18

765 ILCS 1075/5 .......... 19

765 ILCS 1075/30 .......... 19, 20

815 ILCS 505/2 .......... 21

815 ILCS 510/2 .......... 23

815 ILCS 510/3 .......... 23

## INTRODUCTION

Plaintiffs did not sue Adobe because they found their voice recordings in an Adobe dataset, heard their voices being used by an Adobe product, identified an Adobe user who uploaded recordings of their voices, or discovered any Adobe record tying their voices to Adobe. Indeed, across the 99 pages and 200 paragraphs of their Complaint, Plaintiffs—who acknowledge that they are not users of any Adobe voice product—do not and cannot allege *any interaction* between themselves and Adobe. Plaintiffs nonetheless accuse Adobe of unlawfully collecting their voiceprints in violation of four separate Illinois statutes—the Biometric Information Privacy Act ("BIPA"), the Illinois Right of Publicity Act ("IRPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA")—and also assert a claim for unjust enrichment.

Plaintiffs' allegations are premised on sheer conjecture and theoretical possibilities and must be dismissed. Specifically, they allege: (1) Adobe developed voice-AI models that *must have* been trained on large volumes of voice recordings; (2) in order to train its models, Adobe *must have* sourced the voice recordings from public sources on the internet; and (3) because Plaintiffs' voice recordings were publicly available (among countless other voice recordings), Adobe *must have* used *Plaintiffs'* recordings to train its models. Similarly, Plaintiffs also allege that because their voice recordings are publicly available, unidentified third-party Adobe users *must have* uploaded Plaintiffs' voice recordings into Adobe's voice-AI products. Even if Plaintiffs' stacking of "must have" inferences were *conceivable*, that does not make them *plausible*. Such speculative allegations stop far "short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Tellingly, Plaintiffs have simultaneously filed complaints against eight other defendants, all premised on the same basic training theory. *See*

Dkt. 1, Complaint ("Compl.") ¶ 60 n.16. Plaintiffs' claims are allegations in search of a defendant. They do not provide a factual basis for suing *Adobe*.

The Complaint also fails in its entirety for an independent reason: it does not allege that *Adobe's* alleged misconduct occurred primarily and substantially in Illinois, as is required by the Illinois extraterritoriality doctrine. Plaintiffs' allegations regarding Illinois all have to do with either Plaintiffs themselves—*they* reside in Illinois, *their* recordings were produced or recorded in Illinois, and *they* suffered an alleged injury in Illinois—or unidentified and theoretical third-party Illinois residents who Plaintiffs speculate *could have* uploaded recordings of Plaintiffs. Critically, Plaintiffs' allegations do not identify *any* Illinois conduct by *Adobe*.

The utter lack of any connection between these Plaintiffs and Adobe, and a similar lack of connection between Adobe and Illinois, doom all of Plaintiffs' claims. And each of Plaintiffs' claims also fails for independent reasons. Rule 8 requires facts tying this defendant to these Plaintiffs before litigation proceeds. Because the Complaint is devoid of any such allegations, it must be dismissed.

## BACKGROUND

Adobe is a software company known for tools used to create, edit, and manage digital content. As such, unlike Plaintiffs' allegations against many of the other defendants in the parallel cases, the Complaint does not allege that Adobe owns or hosts repositories of recorded speech. Instead, the Complaint's allegations against Adobe relate solely to Adobe's voice AI models and offerings. Specifically, the Complaint alleges that, using AI technology, Adobe's voice offerings allow users to generate, edit, enhance, translate, or dub audio, and that these products are "power[ed]" by two "underlying voice models": Firefly Voice and Firefly Speech (collectively, the "Firefly Models"). Compl. ¶¶ 3, 36–41, 43.

Plaintiffs are Illinois residents who work as broadcast journalists, podcast producers, and

audiobook narrators. *Id.* ¶¶ 7, 11, 14–20. Plaintiffs admit they do not use and have "never interacted" with the Firefly Models or any Adobe voice offerings. *Id.* ¶¶ 76–77, 82. They nonetheless allege, "on information and belief," that Adobe unlawfully collected their voiceprints through two alternative means: (1) "Training the Foundational Models" (the "Training Theory") and (2) "Runtime Capture from User Uploads" (the "Runtime Extraction Theory"). *Id.* ¶¶ 67–75.

Under the Training Theory, Plaintiffs allege that Adobe accessed and ingested their voice recordings from public internet sites (e.g., YouTube), and used those voice recordings to train the Firefly Models by "extracting" their voiceprints and "encoding" them in the Models. *Id.* ¶¶ 67–68, 92. Plaintiffs' theory rests on their speculation that: (1) Adobe's voice-AI models *must have* been trained on large volumes of voice recordings; (2) Adobe *must have* acquired recordings from public sources on the internet; and (3) because Plaintiffs' voice recordings are on the internet, their voiceprints *must have* been among those Adobe collected. *Id*. ¶¶ 7, 68, 92. The Complaint, however, elsewhere pleads statements from Adobe explaining that it "trains its AI models on properly licensed and consented data," including voices it "purchased … from IP owners." *Id.* ¶¶ 48, 53.[1] Adobe's website, which Plaintiffs rely on and incorporate into the Complaint,[2] similarly describes the training source for Adobe Firefly models—"Adobe Firefly

[1] Quoting Jess Weatherbed, *Adobe's New AI Audio Tools Can Add Soundtracks and Voice-Overs to Videos*, The Verge (Oct. 28, 2025), https://www.theverge.com/news/807809/adobe-firefly-ai-audio-generate-soundtrack-speech.

[2] The Court can consider relevant Adobe webpages in evaluating the motion to dismiss both under the incorporation-by-reference doctrine and by taking judicial notice. *See James v. City of Evanston*, 2021 WL 4459508, at *7 n.3 (N.D. Ill. Sept. 29, 2021) ("Because [Plaintiff] referenced [Defendant's] website in his complaint [], its contents could be incorporated by reference." (citing *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012))); *id.* ("[W]here a party refers to another party's website in its briefing, the district court may take judicial notice of the entire contents of that website." (citing *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018))).

models are trained on a dataset of licensed content"—and makes clear that Adobe does not "train[] Adobe Firefly on user content" or "mine the web or video hosting sites for content."[3] Adobe's General Terms of Use—expressly referenced in the Complaint at paragraph 25—states that Adobe "will not use [individuals'] Local or Cloud Content to train generative AI models except for Content [they] choose to submit to the Adobe Stock marketplace"—in other words, content users voluntarily provide.[4]

Similar to the Training Theory, the Runtime Extraction Theory assumes that because Plaintiffs' voice recordings are publicly available, Adobe users *must have* uploaded the recordings to an Adobe commercial voice product, causing Adobe to extract their voiceprints at runtime. Compl. ¶¶ 28, 69–74. Because Plaintiffs admit that they are non-users of and had no interaction with Adobe's voice offerings, *id.* ¶¶ 76–77, they are not alleging that they themselves uploaded their own recordings, but instead that some unidentified and theoretical *other* Adobe user at some unknown time *might* have uploaded their recording into an Adobe product.

Based on these theories, Plaintiffs allege that Adobe has violated four Illinois statutes—BIPA, IRPA, ICFA, and IUDTPA—and assert a claim for unjust enrichment. *Id.* ¶¶ 133–200.

## ARGUMENT

When ruling on a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor." *Kerlin v. Chi. Bd. of Elections*, 2017 WL 5295680, at *2 (N.D. Ill. Nov. 13, 2017). Still, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[3] Adobe, *Our Approach to Generative AI with Adobe Firefly*, https://www.adobe.com/ai/overview/firefly/gen-ai-approach.html (last visited Aug. 31, 2026).

[4] Adobe, *Adobe General Terms of Use*, §§ 2.2(F), 4.3(C)(2) (Oct. 3, 2025), https://www.adobe.com/legal/terms.html.

Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Plaintiffs must plead "factual allegations" that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Allegations that are "'merely consistent with' a defendant's liability … 'stop[] short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[T]he complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief." (cleaned up)).

## I. The Complaint Must Be Dismissed In Its Entirety Because Plaintiffs Do Not Plausibly Allege That Adobe Collected *Their* Voice Data.

### A. Plaintiffs Do Not Plausibly Allege Adobe Collected Or Used Their Voice Data To Train Adobe's Voice AI Models.

Plaintiffs' Training Theory is not plausible because it is not supported by any factual allegations tying Plaintiffs to Adobe. As an initial matter, Plaintiffs do not allege that Adobe owns or hosts large volumes of recorded speech, such as through a social-media platform, streaming service, or audiobook marketplace. Nor do Plaintiffs allege any facts showing that Adobe actually accessed, collected, or otherwise obtained recordings from any public source to train the Firefly Models. In fact, Plaintiffs plead that Adobe has stated that it "trains its AI models on properly licensed and consented data." Compl. ¶ 48; *see also* pp. 3–4, *supra*. As such, Plaintiffs are left to speculate that the "training corpora" required to support the Firefly Models are "necessarily measured in tens of thousands of hours of speech from tens of thousands of distinct speakers," so Adobe *must have* obtained the recordings from public sources that included Plaintiffs' recordings. Compl. ¶ 68. But the Complaint contains no factual allegations regarding which public sources Adobe allegedly accessed or when it accessed them.

Moreover, Plaintiffs do not plausibly allege that Adobe used *their* publicly available recordings to train the Firefly Models. There are no well-pleaded facts that Adobe used the

particular websites where Plaintiffs' recordings purportedly appeared as sources of training data, that Plaintiffs' recordings were present when any alleged collection occurred, or that Plaintiffs' voices appear in any identified corpus of the Firefly Models' training materials. Even the Complaint's few supposedly Plaintiff-specific allegations merely list public sources where Plaintiffs' voice recordings could be found, but do not attempt to connect those recordings *to Adobe*. *See id.* ¶¶ 95–108.

Indeed, the chance that Adobe collected voice recordings from these Plaintiffs—from among the innumerable other recordings on the internet—is minuscule. There are over 269 million adult residents in the United States.[5] Using the largest number compatible with Plaintiffs' allegation that Adobe collected recordings from "tens of thousands of distinct speakers"—99,999 speakers (Compl. ¶ 68)—such a training corpus would represent less than 0.04% of the country's adult population. In other words, Plaintiffs ask the Court to infer that *their* recordings were among a tiny fraction of possible speakers. This inference is nowhere near plausible.

Plaintiffs attempt to plead around this near impossibility by alleging that their voice recordings are "technically ideal for voice-AI training" and "optimal for foundational voice models." *Id*. ¶¶ 7, 92. But Plaintiffs provide no reason their voices are any more "technically ideal" than countless others, let alone how Adobe would have selected their voices if Adobe were, as Plaintiffs speculatively allege, widely collecting—to the tune of "tens of thousands," *id.* ¶ 68—voice recordings from various public sources. At bottom, Plaintiffs' allegations do nothing more than identify the type of recordings they believe would have been ideal for Adobe to use; they do not plead any facts making it plausible that Adobe in fact ingested *these*

[5] *See* U.S. Census Bureau, *National Population by Characteristics: 2020–2025* (June 15, 2026), https://www.census.gov/data/tables/time-series/demo/popest/2020s-national-detail.html.

*Plaintiffs'* recordings.

*Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727 (N.D. Ill. Aug. 6, 2024), in which the court granted the defendant's motion to dismiss in a case with analogous allegations brought under BIPA, is instructive.[6] There, the plaintiff alleged on information and belief that an AI developer "indiscriminately scraped" his photos from the internet for use in an AI training dataset. *Brantley,* 2024 WL 3673727, at *1 (citation omitted). Like here, the plaintiff did not allege he ever used the mobile application at issue or uploaded his photos. *Id.* at *2. Instead, the plaintiff alleged that given his "prolific social media presence," use of dating platforms, and other users' uploads of photos of him, his biometric data *must have been* included in the defendant's AI training dataset. *Id.* The court rejected these *must-have-been* allegations, concluding that the plaintiff's "speculat[ion] that his photos were possibly scraped" and added to the dataset because he "regularly has photos of him uploaded" to the internet was insufficient. *Id.* at *6. "At most, Plaintiff's allegations [were] consistent with the *possibility* that his photos were scraped and contained in the [] Dataset, but … where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also, e.g.*, *In re Mosaic LLM Litig.*, 2025 WL 2402677, at *2 (N.D. Cal. Aug. 19, 2025) (holding "Plaintiffs do not allege facts that could establish that the DBRX models are actually trained on any shadow library websites, let alone those that contain *Plaintiffs'* works," and rejecting argument that the "mere size of the data

[6] The court in *Brantley* dismissed the plaintiff's claim pursuant to a Rule 12(b)(1) motion for lack of standing and failure to plead a concrete and particularized injury-in-fact, but reached that conclusion by applying the *Twombly/Iqbal* plausibility standard and holding that the plaintiff had not plausibly alleged that the defendant collected his biometric data. 2024 WL 3673727, at *5–6; *see Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6).").

sets [could] plausibly connect the dots to Plaintiffs' works" (emphasis added)); *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 7 (S.D.N.Y. 2024) (dismissing copyright claim where the plaintiffs alleged ChatGPT "has been trained on 'a scrape of most of the internet,'" but did not plausibly allege that ChatGPT would "generate a response plagiarizing one of *Plaintiffs'* articles" (emphasis in original)).

As another example, in *Strautins v. Trustwave Holdings, Inc.*, a hacker cyber-attacked the South Carolina Department of Revenue ("SCDOR") and accessed millions of social security numbers and hundreds of thousands of credit card numbers and tax records. 27 F. Supp. 3d 871, 872 (N.D. Ill. 2014). The plaintiff brought privacy claims against the SCDOR's data security provider, alleging that it inadequately protected her PII. *Id.* at 873. Similar to *Brantley*, the court held that the complaint's allegation that the hacker stole *plaintiff's* PII was "a conclusion in need of factual support." *Id.* at 880. The plaintiff's theory relied "entirely on the assumption that her PII was disclosed because (1) the SCDOR was cyber-attacked and (2) she filed tax returns in South Carolina," but "the complaint provide[d] no basis to infer that the hacker (or hackers) obtained *her* data." *Id.* (emphasis in original); *see also, e.g.*, *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (dismissing wiretap claim where plaintiffs failed to allege the defendant disclosed health or treatment information "specific as to them").

The Complaint suffers the same defects: it treats public *availability* of Plaintiffs' recordings as a substitute for facts showing *actual collection* of such recordings. *Brantley* rejected that leap even where the plaintiff alleged a prolific online presence and third-party uploads, *Strautins* rejected it where a database containing taxpayer information was actually hacked—an allegation beyond anything Plaintiffs have alleged here—and, as set forth above, other courts have rejected similar claims involving AI model-training where the plaintiffs offered

no factual allegations that the models were trained on *their* data. The plaintiffs' allegations were inadequate in those cases; they are also inadequate here.

### B. Plaintiffs Do Not Plausibly Allege Adobe Collected Their Voices Through Runtime Extraction.

Plaintiffs' Runtime Extraction Theory is equally, if not more, attenuated, as it involves not the actions of Adobe, but some unidentified and hypothetical third party. According to Plaintiffs, because their voice recordings "are widely and continuously distributed across publicly accessible platforms," unidentified and theoretical Adobe users *must have* uploaded *their* recordings into Adobe products. *See* Compl. ¶¶ 28, 74. But the Complaint again identifies no specific upload to Adobe, let alone one involving Plaintiffs' voices. Instead, the Complaint merely lists public sources that house Plaintiffs' voice recordings without any facts suggesting any third party actually loaded their voice recordings into Adobe's products. *See id.* ¶¶ 95–108.

The Runtime Extraction Theory thus asks the Court to infer that some unknown Adobe users uploaded unknown files containing Plaintiffs' voices into some Adobe offering at some unknown time. *See id.* ¶ 72. That is not a plausible allegation that Adobe collected *Plaintiffs'* voice data. *See* § I.A., *supra* (citing cases). Indeed, under Plaintiffs' logic, any individual whose voice recording appears on the internet could maintain a claim against any company that accepts audio uploads on the theory that some user, somewhere, might have uploaded a clip of their voice that might have been processed into a voiceprint.[7] That is not sufficient to state a BIPA, ICFA, IRPA, or IUDTPA claim. And Plaintiffs' alleged fame and number of publicly available

[7] Even accepting Plaintiffs' speculative allegations that Adobe collected *Plaintiffs'* voice data, it would not mean Adobe possessed or collected a "voiceprint" as defined by BIPA, as opposed to voice audio not regulated by the statute. *See McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) ("[U]nder [BIPA's] terms, voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint)."); *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024) ("[U]nder a plain reading of BIPA, Plaintiff must allege that the biometric identifier can be used to identify an individual."). Adobe is not moving to dismiss on this basis.

voice recordings cannot save their claim for the reasons discussed above. *See* p. 6, *supra*.

### C. Plaintiffs Cannot Rely On "Information And Belief" Allegations Or Adobe's "Exclusive Control" To Obtain Discovery Into Whether They Have A Claim.

Plaintiffs' attempt to rest their allegations on "information and belief," Compl. ¶¶ 28, 67, 74, 92, 126, does not cure the fundamental defects of their claims. Information-and-belief allegations do not absolve Plaintiffs from *Twombly* and *Iqbal*'s pleading requirements: "allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017) (citation omitted). "If plaintiff has nothing on which it can base a clear and direct allegation that it has suffered an injury," the allegation "is grounded on pure speculation, something that *Twombly* and *Iqbal* prohibit." *Id.* (citations omitted).

Nor is the plausibility standard relaxed because Plaintiffs allege details are in Adobe's exclusive control. *See, e.g.*, Compl. ¶ 93 (alleging Adobe has "exclusive control" over "records identifying which specific voice recordings Adobe ingested"). Courts reject attempts to "seek a more lenient application of the pleading standards because … pertinent facts are in exclusive possession of defendants," as "the Supreme Court has roundly rejected [the] contention that the pleading requirements are relaxed when a plaintiff has not yet had an opportunity to conduct discovery." *Rodriguez v. ByteDance, Inc.*, 2025 WL 2495865, at *7 (N.D. Ill. Aug. 29, 2025) (cleaned up); *see also, e.g.*, *G.T. v. Samsung Elecs. Am., Inc.*, 2026 WL 2279903, at *6 (7th Cir. Aug. 7, 2026) ("recogniz[ing] that technology companies … have significantly more information about their proprietary systems and software than everyday customers, who may not be able to ascertain their inner workings without the aid of discovery," but affirming dismissal of BIPA claim because "the burden rests on Plaintiffs to plausibly state a cause of action that can withstand judicial scrutiny"); *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019)

(affirming dismissal where facts were alleged to be "peculiarly within [defendant's] possession and control," because the plaintiff "must marshal more than unsubstantiated suspicions to gain entitlement to broad-ranging discovery"); *Canter & Assocs., LLC v. Teachscape, Inc.*, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007) ("[T]he fact that [the plaintiff] does not have access to defendants' course materials … does not serve to transform what is essentially a guess into a cognizable claim."). Although data-privacy cases may involve "informational asymmetry," Plaintiffs "still must plausibly allege that they have been injured … even if they cannot provide all the attendant details." *Rodriguez*, 2025 WL 2495865, at *7. Plaintiffs fail to do so.

*　　　*　　　*

Under Plaintiffs' theory, any person whose voice recording is publicly available could sue any company creating voice AI products and demand burdensome and costly discovery into, for example, proprietary datasets, models, source materials, and training records. Indeed, by suing nine separate companies based on similar speculative theories, Compl. ¶ 60 n.16, that is exactly what Plaintiffs are seeking to do here. *Twombly* and *Iqbal* require more before unlocking the gates to that discovery. *See, e.g.*, *Iqbal*, 556 U.S. at 678–79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Prewett Enters. v. Grand Trunk W. R.R. Co.*, 2019 WL 6310495, at *9 (N.D. Ill. Nov. 25, 2019) ("[A] plausible complaint begets discovery, not the other way around…. [Plaintiff] is not entitled to conduct a fishing expedition at discovery on the basis of a completely unsupported allegation. This is precisely the type of insufficiently pleaded allegation the federal pleading standards are designed to filter out."). The Complaint must be dismissed.

## II. **The Complaint Must Be Dismissed In Its Entirety Because Plaintiffs Fail To Plead That Adobe's Alleged Conduct Occurred Primarily And Substantially In Illinois.**

Even if Plaintiffs had plausibly alleged that Adobe collected their voice data (they have

not), all of their claims fail for a second, distinct reason: Plaintiffs do not allege that Adobe's alleged conduct giving rise to their claims occurred in Illinois. A "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (citation omitted). None of the statutes at issue in the Complaint includes such a provision,[8] so Plaintiffs can only state a claim if the circumstances related to the alleged violations occurred primarily and substantially in Illinois. *Avery*, 835 N.E.2d at 854. Importantly, the extraterritoriality standard focuses on where *the defendant's* challenged conduct occurred. Therefore, the Complaint must allege more than Plaintiffs' "physical presence in Illinois when they interacted with [Adobe's] products." *Campana v. Nuance Commc'ns, Inc.*, 2024 WL 2809838, at *3 (N.D. Ill. Mar. 8, 2024) (dismissing BIPA claim alleging collection of voiceprints on extraterritoriality grounds). Rather, Plaintiffs must allege that *Adobe* actually collected, extracted, possessed, stored, disclosed, or monetized their alleged voice data "in Illinois." *Id.* at *2.

The Complaint does not come close to meeting that standard. Plaintiffs do not allege that Adobe has any facility in Illinois, servers in Illinois, or that it otherwise processed data relating to Plaintiffs' voices in Illinois. Indeed, the Complaint acknowledges that Adobe receives and processes voice data at "Adobe-controlled endpoints"—i.e., servers—and that those servers sit in a data center *outside* Illinois. Compl. ¶¶ 27–28; *see McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) (granting motion to dismiss BIPA claim on extraterritoriality grounds and emphasizing that AWS's data centers and the third-party

---

[8] *See Campana v. Nuance Commc'ns, Inc.*, 2024 WL 2809838, at *2 (N.D. Ill. Mar. 8, 2024) (BIPA); *Azuz v. Accucom Corp.*, 2025 WL 2807653, at *7 (N.D. Ill. Oct. 2, 2025) (IRPA); *USAA Fed. Savs. Bank v. PLS Fin. Servs., Inc.*, 260 F. Supp. 3d 965, 972 (N.D. Ill. 2017) (ICFA); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011) (IUDTPA).

technology provider were located outside Illinois); *McGoveran v. Amazon Web Servs., Inc.*, 175 F.4th 434, 442 (3d Cir. 2026) (describing the district court's "emphasis" on "the geographic location of Amazon's servers rather than the location of the harmed Plaintiffs" as "spot on"). Nor do Plaintiffs identify any extraction, creation, or storage of a voiceprint in Illinois. *See Vance v. Google LLC*, 2024 WL 1141007, at *3–4 (N.D. Cal. Mar. 15, 2024) ("Plaintiffs do not allege that Google processes, stores, or otherwise makes use of the [data] in Illinois.").[9] And because Plaintiffs admit that they "never interacted with Adobe" (*see* § I, *supra*), they certainly do not and cannot allege that they did so *in Illinois. See McGoveran*, 2021 WL 4502089, at *6 ("Plaintiffs never interacted directly with [the defendants] from Illinois, and the Defendants' conduct cannot be fairly attributed to Illinois."); *Vance*, 2024 WL 1141007, at *3 ("Plaintiffs have not plausibly alleged any direct interaction with Google that could plausibly be imputed to Illinois such that it would give rise to the alleged BIPA violations." (cleaned up)).

Instead of focusing on Adobe's conduct, the Complaint focuses on *Plaintiffs'* ties to Illinois, including:

- Plaintiffs reside in Illinois. *See, e.g.*, Compl. ¶¶ 7, 14–20. But it is well established that "a plaintiff's residency is not enough to survive a motion to dismiss based on extraterritoriality." *McGoveran*, 2021 WL 4502089, at *4; *see also, e.g.*, *Campana*, 2024 WL 2809838, at *2–3.
- Plaintiffs' voices were produced and recorded in Illinois. *See, e.g.*, Compl. ¶¶ 23, 27, 32–33, 35, 83–84. But this is just another way of alleging that Plaintiffs reside in Illinois. *See McGoveran*, 2021 WL 4502089, at *4 ("Plaintiffs' phone calls …

[9] In *Vance*, the court later denied Google's motion to dismiss an amended complaint, but that is only because the plaintiffs added an allegation that Google's product at issue was "engineered by Defendant's engineering team in Chicago." *Vance v. Google LLC*, 2024 WL 5011611, at *3–4 (N.D. Cal. Dec. 5, 2024). Plaintiffs make no similar allegations here.

'originat[ed] from Illinois' because Plaintiffs live there."). Plaintiffs' attempt to recast this point as Adobe's "targeted acquisition of identifiably Illinois-origin biometric material," Compl. ¶ 84(b), does not change the analysis; the locus of the regulated conduct is where the data is processed, not where the underlying recording originated. *See McGoveran*, 2021 WL 4502089, at *6 (rejecting argument that "under BIPA, as long as the source of the biometric data is Illinois, that's enough to establish liability").

- Plaintiffs' voices were uploaded to Adobe by hypothetical third-party users located in Illinois. Compl. ¶¶ 28, 35. Even if Plaintiffs could allege that these uploads in fact took place, the location of the upload does not "say anything about the location where the rest of the conduct occurred." *McGoveran*, 2021 WL 4502089, at *4. The alleged wrongdoing stems not from the alleged upload by third-party users, but from Adobe's supposed extraction and encoding of Plaintiffs' alleged voiceprints. The fact that users were "physical[ly] presen[t] in Illinois when they interacted with [Adobe's] products … does not plausibly suggest" that the collection of the alleged voiceprints "occurred 'primarily and substantially' in Illinois." *Campana*, 2024 WL 2809838, at *3; *see also Stein v. Clarifai, Inc.*, No. 1:22-cv-00314, Dkt. 29 (Nov. 21, 2022 Hr'g Tr.), at 24–25 (D. Del. Jan. 9, 2023) (allegation that Plaintiffs "uploaded [their] pictures from" Illinois does not suggest that the defendant "captured biometric identifiers from Plaintiffs' photographs and used their facial templates to train recognition technology" in Illinois).
- Plaintiffs' "economic and privacy injuries" were felt in Illinois. Compl. ¶ 35; *see also id.* ¶¶ 30, 32. This allegation rests on the circular argument that because Plaintiffs have alleged a BIPA violation against Illinois residents, they have alleged an injury

stemming from that violation in Illinois. "[F]or the purposes of establishing [Adobe's] connection to Illinois," these alleged injuries are "little more than a proxy for Plaintiffs' residency." *Vance*, 2024 WL 1141007, at *4.

- Adobe's failure to "provide written notice and obtain a written release" was "localized where those persons reside and where their voices were produced and recorded." Compl. ¶ 27; *see also id.* ¶¶ 25, 29–32, 84. This argument is similarly circular because without alleging an interaction between Plaintiffs and Adobe in Illinois, "Plaintiffs have not established that [Adobe] was ever required to provide Plaintiffs notice." *Vance*, 2024 WL 1141007, at *4; *see also McGoveran*, 2021 WL 4502089, at *4 ("It really makes no sense to assign a location for an act that did not occur." (cleaned up)).

*McGoveran* is particularly instructive. There, Illinois-resident plaintiffs alleged that two defendants—Amazon Web Services ("AWS") and a voiceprint technology provider—collected and stored their voiceprints when the plaintiffs, while in Illinois, called a third-party customer service number. 2021 WL 4502089, at *2. Even though the plaintiffs alleged that the defendants collected data "from calls originating from Illinois" and that "Plaintiffs' voice audio was intercepted in Illinois," the court held that there was "no indication in the complaint that Defendants did anything in Illinois" and no suggestion that the plaintiffs' "voiceprints" (as opposed to "voice audio") "were created, possessed, or stored in Illinois." *Id.* at *4 (cleaned up). The court thus dismissed the complaint based on extraterritoriality. *Id.* at *3–6; *see also Campana*, 2024 WL 2809838, at *1–3 (dismissing claim alleging defendant collected plaintiff's voiceprint from a call placed from Illinois); *Vance*, 2024 WL 1141007, at *3–4 (dismissing claim alleging defendant collected plaintiffs' faceprints uploaded to a website from Illinois).

For these same reasons, the Complaint must be dismissed on extraterritoriality grounds.

## III. <u>Plaintiffs' BIPA Claims (Counts I–V) Fail To State A Claim.</u>

### A. All of Plaintiffs' BIPA Claims Fail Because Plaintiffs Do Not Sufficiently Allege That Adobe Possessed Or Collected Their Biometric Data.

Plaintiffs' BIPA claims rest on the premise that Adobe collected or possessed their biometric data. *See* 740 ILCS 14/15(a)–(e). Because Plaintiffs fail to plead any facts tying Adobe to any Plaintiff's voice data, § I, *supra*, they do not adequately allege that Adobe collected or possessed their biometric data. Each of Plaintiffs' BIPA counts must therefore be dismissed.

### B. Plaintiffs' Section 15(c)–(e) Claims Fail For Independent Reasons.

#### 1. <u>The Section 15(c) Claim (Count III) Fails Because Plaintiffs Do Not Sufficiently Allege Adobe Profited From Sharing Access To Their Biometric Data.</u>

Section 15(c) prohibits transactions involving the transfer of *a person's biometric data* in exchange for a benefit. 740 ILCS 14/15(c) ("No private entity … may sell, lease, trade, or otherwise profit from [an individual's] biometric identifier or biometric information."). In other words, it only applies if the defendant actually shares biometric data—here, the actual (alleged) voiceprints—with a third party.

Plaintiffs fail to meet this requirement. Plaintiffs allege Adobe "profits from" their alleged voiceprints because it "markets, sells, and delivers commercial voice products powered by those voiceprints," uses voiceprints "to develop, train, and commercially operate [its] voice synthesis products," and "monetiz[es]" products "through [] integrated commercial channels." Compl. ¶¶ 84(c), 151. Even assuming Adobe collected voiceprints (it does not), these allegations, at most, speak to Adobe's *voice products*, and say nothing about Adobe sharing Plaintiffs' *biometric data*. *See Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *18–19 (N.D. Ill. Mar. 3, 2025) (dismissing § 15(c) claim where "plaintiffs have not alleged that defendants ever shared anything but the 'underlying medium'"); *Vance v. Microsoft Corp.*, 534 F. Supp. 3d

1301, 1307–09 (W.D. Wash. 2021) (dismissing § 15(c) claim where Microsoft allegedly used biometric data to "improve its facial recognition products and technologies, which improved the effectiveness of those products and made them more valuable in the commercial marketplace," but Microsoft did not "share[] access to biometric data through its products" (cleaned up)).

Plaintiffs attempt to get around BIPA's requirements in two ways, neither of which has merit. First, Plaintiffs rely on § 15(c)'s catchall phrase, "otherwise profit," claiming that it is "a statutory catch-all that extends beyond selling, leasing, or trading." Compl. ¶ 150. But when a statute lists specific terms followed by a general phrase, the general phrase is construed to include only things of the same kind. *Pooh-Bah Enters., Inc. v. County of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). Accordingly, "'otherwise profit' should be interpreted in light of the terms that precede it: sell, lease, and trade, which all contemplate a transaction in which an item is given or shared in exchange for something of value." *Rodriguez*, 2025 WL 672951, at *19 (cleaned up). "Applying that definition, none of plaintiffs' theories suggests [Adobe] 'benefited from' using plaintiffs' biometric data in a for-profit commercial transaction." *Id.* Second, Plaintiffs allege that "the biometric data and the product are … the same thing," Compl. ¶ 151. But again, Plaintiffs allege no facts supporting a claim that Adobe profits from sharing access to their alleged biometric data with a third party. *Rodriguez*, 2025 WL 672951, at *18 (dismissing § 15(c) claim notwithstanding allegation that the defendant "incorporate[d] plaintiffs' biometric identifiers as a 'necessary element' into their business model").

2. <u>The Section 15(d) Claim (Count IV) Fails Because Plaintiffs Do Not Sufficiently Allege That Adobe Disclosed Biometric Data.</u>

Plaintiffs also fail to plausibly allege that Adobe "disclose[d], redisclose[d], or otherwise disseminate[d]" their alleged biometric data to any third party. 740 ILCS 14/15(d). The Complaint includes only the conclusory allegation, made on information and belief, that Adobe

shared their voice data "with affiliates, vendors, and service providers." Compl. ¶ 81; *see also id.* ¶ 157. Plaintiffs do not identify any recipient of their data, what data was transferred, when, or how. Courts in this District have dismissed § 15(d) claims resting on such generic assertions. *See, e.g.*, *Donets v. Vivid Seats LLC*, 2023 WL 11909225, at *2 (N.D. Ill. Oct. 10, 2023) (dismissing claim alleging disclosure to "payroll company"); *Horn v. Method Prods. PBC*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022) (dismissing claim alleging disclosure to "third-party vendors"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (same).

Plaintiffs point to a statement in Adobe's privacy policy that Adobe discloses "personal information" to "other companies in the Adobe family," "service providers," and "data processors." Compl. ¶ 81. This policy relates to Adobe's services generally; it does not reference the Firefly Models. And § 15(d) prohibits actual acts of disclosure, not policies contemplating them. A general description of the categories of recipients to whom Adobe *may* disclose information does not plausibly allege that Adobe in fact disseminated these Plaintiffs' voice data.

3. <u>The Section 15(e) Claim (Count V) Fails Because Plaintiffs Do Not Sufficiently Allege That Adobe Stored, Transmitted, Or Protected Biometric Data Below The Industry Standard Of Care.</u>

Section 15(e) requires a private entity to store, transmit, and protect biometric data using a "reasonable standard of care within [its] industry" and "in a manner that is the same as or more protective than" how it "stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e). Plaintiffs' claim fails because the Complaint pleads no facts about how Adobe stores, transmits, or protects biometric data—much less facts plausibly suggesting that Adobe's practices fall below the reasonable standard of care or the protections afforded to other information. *See, e.g.*, *McClaine v. DX Enters. Inc.*, 2024 WL 3860971, at *4 (S.D. Ill. Aug. 19, 2024) (dismissing § 15(e) claim because "Plaintiff does not allege any facts relating to Defendant's failure to protect the biometric data in its possession"); *Delgado v. Meta*

*Platforms*, *Inc.*, 718 F. Supp. 3d 1146, 1161 (N.D. Cal. 2024) (similar). Plaintiffs instead offer three substitutes, none of which states a claim. First, Plaintiffs allege how Adobe protects its own proprietary information and its users' data. Compl. ¶¶ 164–65. These allegations say nothing about how Adobe treats biometric data. Second, Plaintiffs allege, on information and belief, that Adobe transfers their biometric data to affiliates and vendors "without safeguards … verifiable to the data subjects." *Id.* ¶ 166. That Plaintiffs cannot "verify" Adobe's safeguards does not plausibly allege their absence, and as discussed above, Plaintiffs' dissemination allegations are conclusory. *See* § III.B.2, *supra*. Third, Plaintiffs allege that Adobe has not published a retention-and-destruction policy. Compl. ¶ 167. The absence of a published policy says nothing about how Adobe stores or protects data, and BIPA addresses retention policies in § 15(a).

## IV. <u>Plaintiffs' Remaining Claims Must Be Dismissed For Additional Reasons.</u>

### A. Plaintiffs' IRPA Claim (Count VI) Must Be Dismissed Because Plaintiffs Do Not Allege Public Use Of Their Identities Or An Unauthorized Digital Replica.

#### 1. <u>Plaintiffs Do Not Allege That Adobe Used Their Identities To Sell A Product Or Service.</u>

IRPA provides that "[a] person may not use an individual's identity for commercial purposes … without having obtained previous written consent[.]" 765 ILCS 1075/30(a). "'Identity' means an attribute … that serves to identify [an] individual to an ordinary, reasonable viewer or listener," including one's voice. 765 ILCS 1075/5. "'Commercial purpose' means the public use or holding out of an individual's identity" in connection with the offering for sale, sale of, or advertising or promotion of a product or service. *Id*. Accordingly, Plaintiffs' "identit[ies] must help sell something—whether it is that product or a separate product or service." *D'Ambrosio v. Meta Platforms Inc.*, 176 F.4th 928, 935 (7th Cir. 2026) (quoting *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1102 (7th Cir. 2022)). "Examples of using an identity to

help sell something … include using a person's image in a media kit to sell advertising space to advertisers; as a free preview for a subscription background report service; or as a teaser for a license for a higher-resolution, unwatermarked version of the same image." *Id.* (citing cases).

The Complaint fails to meet the threshold "identity" and "commercial purpose" requirements. As a preliminary matter, Plaintiffs do not plausibly allege that Adobe collected *their* voice data, *see* § I, *supra*, so Plaintiffs do not plausibly allege that Adobe used *their* "identities" for a commercial purpose. Additionally, while Plaintiffs allege that Adobe "extracted and modeled" their vocal characteristics, used those characteristics in its products, and "holds out its products' ability to generate realistic, expressive, and human-sounding voices … as a core commercial feature," Compl. ¶ 175, Plaintiffs do not allege that Adobe actually used or held out any particular voice or identity to sell, advertise, promote, or offer any product. Nor do they allege any change in the functionality or quality of Adobe's voice-AI products due to the inclusion or exclusion of particular voices or identities. Adobe's alleged *input* of voice data into its model development and marketing of product capabilities do not satisfy IRPA's requirement that identities be "held out" to a prospective customer. *See Huston*, 53 F.4th at 1102 ("It is not enough for [the plaintiff's] name and other information to appear on or within a product.").

2. Plaintiffs Do Not Allege Adobe Generated Or Distributed An Unauthorized Digital Replica Of Any Plaintiff's Voice.

IRPA also prohibits the "knowing" distribution of "a sound recording or audiovisual work with actual knowledge that the work contains an unauthorized digital replica." 765 ILCS 1075/30(b). Plaintiffs fail to sufficiently plead either a "digital replica" or "actual knowledge." Plaintiffs' allegation—that "Adobe's voice synthesis and voice-cloning products generate, distribute, and make available to the public voice outputs that replicate or closely simulate the distinctive vocal characteristics of Plaintiffs," Compl. ¶ 177—is speculative, unsupported, and

simply mirrors the statutory language. The Complaint identifies no output that reproduces a Plaintiff's voice, and Plaintiffs' speculation that Adobe's software theoretically could "replicate or closely simulate" Plaintiffs' vocal characteristics does not suffice. *Id*. And even if Plaintiffs had pleaded the existence of a digital replica, they plead no facts indicating that Adobe *knew* that any output replicated any Plaintiff and was then distributed to the public.

### B. Plaintiffs' ICFA Claim (Count VII) Must Be Dismissed Because Plaintiffs Do Not State A Deceptive Practices Or Unfairness Claim.

To state an ICFA claim, a plaintiff must allege, among other things, a deceptive or unfair act that proximately caused them harm. 815 ILCS 505/2; *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 461–62 (Ill. 2024). Plaintiffs cannot meet these requirements under either a deception or unfairness theory.

***Deceptive Practices***. Plaintiffs' deceptive practices theory fails for two independent reasons. *First*, Plaintiffs fail to adequately allege a deceptive statement. An ICFA claim based on deceptive practices is subject to Rule 9(b)'s heightened pleading standard. *Smith v. Respiro, LLC*, 2025 WL 1883817, at *7 (N.D. Ill. July 8, 2025). The only allegedly deceptive statement Plaintiffs identify is Adobe's characterization of the Firefly Models "as 'commercially safe' and as trained on 'licensed' or 'responsibly sourced' content." Compl. ¶ 185. But Plaintiffs do not explain, with particularity, *how* the statement is deceptive. Plaintiffs claim the statement is misleading because it does not disclose additional detail regarding the "licenses, sources, or rights-holders." *Id.* But a statement is not deceptive simply because a plaintiff may wish it shared more detail. And no reasonable person would infer the absence of such detail as a reason to question the sourcing of the content. While Plaintiffs might be misled "by [their] own assumptions" about how Adobe obtained the content, that is not a legally sufficient basis to find Adobe's actual representation deceptive. *Craw v. Clorox Co.*, 692 F. Supp. 3d 854, 860–62 (C.D.

Ill. 2023) (dismissing ICFA claim).

*Second*, Plaintiffs do not plausibly allege any deceptive statement or omission that proximately caused them harm. "If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury." *Tri-Plex Tech. Servs.*, 241 N.E.3d at 462; *see also De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."). Plaintiffs are not purchasers or consumers of Adobe's products, and have no relationship with Adobe at all. Compl. ¶¶ 76–77, 82, 93. To the contrary, Plaintiffs' theory depends on their status as non-users who "never interacted" with Adobe voice products and never read any Adobe privacy policy or disclosure. *Id.* ¶ 77. Plaintiffs therefore cannot establish the proximate cause ICFA requires. *See Tri-Plex*, 241 N.E.3d at 463 ("[T]he plaintiff concedes it is not a purchaser or consumer of the defendants' products. The allegations in the plaintiff's complaint thus are insufficient to establish the proximate cause element for a cause of action under the Consumer Fraud Act.").

***Unfair Conduct***. Plaintiffs allege that Adobe's conduct is "unfair" because it "offends Illinois public policy" and "causes substantial economic and privacy injury to Illinois residents." Compl. ¶ 184. Plaintiffs' public policy argument is premised on their BIPA and IRPA allegations, *id*., and Plaintiffs do not plausibly allege that Adobe violated BIPA or IRPA. *See* §§ III, IV.A, *supra*; *Batson v. Live Nation Ent., Inc.*, 2013 WL 992641, at *4 (N.D. Ill. Mar. 13, 2013) (alleged unfair conduct does not violate public policy if it does not violate underlying statutes). And the only "economic and privacy" injuries Plaintiffs identify are "the irreplaceable loss of control over biometric identifiers, the unauthorized commercial use of vocal identities,

and market displacement in the professional voice industries." Compl. ¶ 184. These are not the type of *consumer* harms—paying inflated prices, being defrauded in a transaction, or receiving defective goods—that ICFA is designed to address. *See Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 846, 850 (N.D. Ill. 2024) (dismissing claim alleging defendant "aggregat[ed] and s[old]" plaintiffs' "personal information without consent or compensation," because "loss of privacy" injury is not "actual damage[] as required by the ICFA").

Plaintiffs also fail to allege that Adobe's supposedly unfair conduct proximately caused them harm. *See Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 833 (N.D. Ill. 2009). The injuries Plaintiffs identify—lost and diminished licensing income, suppressed voiceover and narration rates, diverted opportunities, and loss of control over their biometric data and professional identities, Compl. ¶ 186—are untethered to Adobe. Plaintiffs identify no engagement they lost to an Adobe product, no contract a client cancelled, and no rate Adobe's products depressed.

### C. Plaintiffs' IUDTPA Claim (Count VIII) Must Be Dismissed Because Plaintiffs Do Not Allege Future Harm.

IUDTPA prohibits conduct that causes a "likelihood of confusion" and affords injunctive relief only to "[a] person likely to be damaged by a deceptive trade practice of another." 815 ILCS 510/2(a)(2)–(3), 510/3. Rule 9(b)'s heightened pleading standard applies. *Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, 2013 WL 4565382, at *9 (N.D. Ill. Aug. 27, 2013).

*First*, Plaintiffs' IUDTPA claim fails because Plaintiffs have not sufficiently alleged (even under a plausibility standard) that Adobe's conduct will likely cause confusion or harm. While Plaintiffs make the conclusory allegation that Adobe's practices are "likely to cause confusion or misunderstanding," Compl. ¶ 191, "the IUDTPA clearly requires that *the relevant plaintiff* face a likelihood of harm in order to obtain an injunction," and "[a] finding that a practice gave rise to 'a likelihood of confusion' does not in itself satisfy this condition." *LG*

*Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F. Supp. 2d 708, 719 (N.D. Ill. 2011) (emphasis added; citation omitted). Plaintiffs are voice professionals who allege detailed awareness of precisely how Adobe allegedly generates and labels synthetic voice content, *e.g.*, Compl. ¶¶ 3–5, 67–75, 92; they are thus "now aware" of Adobe's allegedly unlawful conduct and "not likely to be harmed by the practices in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014); *see also Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 773 (C.D. Ill. 2020) ("In most consumer actions, the plaintiff is unable to allege facts showing a likelihood of future harm because the harm has already occurred, and because the plaintiff is unlikely to be deceived by a defendant's misstatements again in the future."). Likewise, while Plaintiffs make the conclusory allegation that Adobe's voice content is "likely to cause confusion or misunderstanding" about whether real speakers created, endorsed, sponsored, or authorized the content, Compl. ¶ 191, they identify no specific voice output that resembles any Plaintiff nor any consumer who has experienced or is likely to experience confusion. *See Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1064 (N.D. Ill. 1982) (dismissing IUDTPA claim where plaintiff alleged the defendants' "use of plaintiff's name … is likely to cause confusion or misunderstanding" regarding the "sponsorship, affiliation, connection, or association of plaintiff with defendants' program," because it is "nothing more than a sweeping legal conclusion cast in the form of a factual allegation").

*Second*, Plaintiffs' IUDTPA claim fails because it is premised on an omissions-based theory—that Adobe's offerings "generate voice outputs that simulate authentic human speech" without disclosing that the "voice outputs are AI-generated, that the underlying foundational voice models were built using voice recordings of unidentified speakers, and that the individuals whose vocal characteristics are reproduced did not authorize the use." Compl. ¶¶ 191, 193. An

IUDTPA claim cannot be premised on an omission; "for a violation to occur, the defendant must make some form of a representation (or do something) to the public." *Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997).

### D. Plaintiffs' Unjust Enrichment Claim (Count IX) Must Be Dismissed.

Plaintiffs' unjust enrichment claim is based on the same alleged conduct underlying their statutory claims—specifically, the BIPA § 15(c) and IRPA claims. *Compare* Compl. ¶ 151 (Section 15(c): alleging "Adobe has profited, and continues to profit" from Plaintiffs' alleged biometric data), ¶ 175 (IRPA: alleging Adobe uses Plaintiffs' identities "for commercial purposes"), *with* ¶ 200 (unjust enrichment: seeking "disgorgement of Adobe's profits attributable" to the alleged "exploitation" of Plaintiffs' "biometric information[] and identities"). Where an unjust enrichment claim "rests on the same improper conduct alleged in another claim," it "will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because Plaintiffs' statutory claims fail, so too does Plaintiffs' unjust enrichment claim. Additionally, Plaintiffs' unjust enrichment claim must be dismissed for the separate reason that BIPA, IRPA, and ICFA provide Plaintiffs with statutory remedies that are adequate remedies at law. *See First Midwest Bank v. Cobo*, 90 N.E.3d 567, 575 (Ill. App. Ct. 2017), *aff'd*, 124 N.E.3d 926 (Ill. 2018); *Keystone Montessori Sch. v. Vill. of River Forest*, 187 N.E.3d 1167, 1194–95 (Ill. App. Ct. 2021) (statutory Tax Code remedy constituted adequate legal remedy and "the court did not err in dismissing [plaintiff's] unjust enrichment claim"); *Vance v. Google LLC*, 2024 WL 5011611, at *7–8 (N.D. Cal. Dec. 5, 2024) (dismissing unjust enrichment claim to the extent the plaintiffs sought disgorgement (as opposed to an injunction) because the "legal remedies available … under BIPA" were adequate remedies at law).

## CONCLUSION

Adobe respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: August 31, 2026

Respectfully submitted,


*<u>/s/ Kathleen L. Carlson</u>*
Kathleen L. Carlson
Lawrence P. Fogel
Andrew F. Rodheim
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
kathleen.carlson@sidley.com
lawrence.fogel@sidley.com
arodheim@sidley.com

*Counsel for Adobe Inc.*